(C. D. 876)

F. B. WILCON *v.* UNITED STATES

United States Customs Court, Third Division

(Decided August 30, 1944)

*Henry L. Ziegel* for the plaintiff.
*Paul P. Rao*, Assistant Attorney General (*Daniel I. Auster* and *Julius G. Paider, Jr.*, special attorneys), for the defendant.

Before CLINE, KEEFE, and EKWALL, Judges

CLINE, Judge: This is a suit against the United States in which the plaintiff claims that the collector at the port of Boston erred in assessing duty on merchandise invoiced as "table potatoes" at 60 cents per 100 pounds under paragraph 771 of the Tariff Act of 1930, as modified by the trade agreement with Canada, published in T. D. 49752. It is claimed that duty should have been assessed at 37½ cents per 100 pounds under said trade agreement. The provisions in the trade agreement involved read as follows:

PAR. 771. White or Irish potatoes, other than certified seed potatoes, as defined in the preceding item, when entered for consumption during the period—
  From March 1 to November 30, inclusive, in any year___ 37½¢ per 100 lbs.
  From December 1 in any year to the last day of the following February, inclusive_____ 60¢ per 100 lbs.

It is apparent that the rate of duty to be assessed depends upon when the potatoes were entered for consumption. If they were entered between March 1 and November 30, 1940, inclusive, the rate of duty to be assessed is 37½ cents per 100 pounds, but, if they were entered between December 1, 1940, and the last day of the subsequent February, inclusive, the rate should be 60 cents per 100 pounds.

The plaintiff called Mr. Ben R. Wilcon, who is connected with the customs brokerage firm in whose name the entry was made. He testified that on the day before the boat containing the shipment arrived, that is, on November 29, 1940, he went to the entry division of the customhouse and explained that the shipment would arrive the next day (Saturday) and he wanted to enter the merchandise at the 37½ cent rate which expired on that day; that he asked whether he should make a consumption entry on Saturday, giving the estimated number of bags and the estimated value, as the consular invoice had not arrived, or whether he should file a preliminary entry and an immediate delivery bond on Saturday and make a consumption entry within 48 hours thereafter; that, after a little discussion, he was advised that his preliminary entry would "hold up" and that he could make the entry within 48 hours thereafter; that he filed the preliminary entry and the immediate delivery permit bond on November 30 and took delivery of 132 bags of the merchandise on that day and filed a consumption entry on December 3, entering at 37½ cents per 100 pounds, which was approved by the collector; that about a month

afterwards he was notified by the entry division that a letter had been received from the Bureau of Customs in Washington stating that the shipment came under the quota of the week ending December 6 or 7 and that duty should be assessed at 60 cents per 100 pounds which was the rate that applied during that week; that he would have entered the goods and paid the duties on November 30 if he had not been advised by the customs officers to adopt the other plan and make a preliminary entry on November 30 and file a consumption entry within 48 hours thereafter. On cross-examination he testified that the customs officers did not direct him to make entry in any manner or on any particular day. He testified:

X Q. But they didn't tell you that you must enter it immediately, make your entry immediately, or they didn't tell you that you positively could wait without fear of any complications on December 3?—A. I will answer that in two parts. They didn't tell me that I must make it that Saturday. They did tell me that I could make it any time within the 48 hour period and be covered by that particular rate of duty. That is the reason that I made it within the 48 hour period.

The next witness called by the plaintiff was Mr. Abraham Siegel who is the president of the importing firm, the party in interest. He was questioned merely about the delivery on November 30, 1940, of 132 bags of potatoes out of the shipment, which consisted of 7,005 bags.

The defendant called two Government officers, showing by them the weight of the shipment and the date when the consumption entry was filed, that is December 3, 1940. They admitted that 132 bags from the shipment were delivered on November 30.

The plaintiff introduced photostatic copies of his blanket permit of delivery and his immediate delivery term bond, and they were received in evidence and marked exhibits 1 and 2. An examination thereof shows that they do not refer specifically to the instant shipment. The witness testified that they are good for 1 year and an examination of the documents confirms that statement. Exhibit 1 is a special permit for immediate delivery of perishable articles during the period from January 11, 1940, to January 10, 1941, and the term of the bond (exhibit 2) is from January 11, 1940, to and including January 10, 1941.

The consumption entry covering the merchandise in the instant shipment, with certain letters and documents attached, was admitted in evidence and marked collective exhibit 3.

Counsel for the plaintiff contends, in his brief, that duty should have been assessed at 37½ cents per 100 pounds on the potatoes in the instant shipment because the merchandise arrived on November 30, 1940, and part of it was delivered on that day under a preliminary entry, which is one of the kinds of entries listed in article 309 of the Customs Regulations of 1937 under the title "Preliminary entry and immediate delivery (article 354)." An examination of article 354 of

the regulations shows that it is based on section 448 (b) of the Tariff Act of 1930, which reads as follows:

(b) SPECIAL DELIVERY PERMIT.—The Secretary of the Treasury is authorized to provide by regulations for the issuing of special permits for delivery, prior to formal entry therefor, of perishable articles and other articles, the immediate delivery of which is necessary.

Article 354 of the Customs Regulations of 1937 provides that special permits for the delivery of perishable articles may be issued by the collector prior to formal entry. We find nothing in the tariff provision above quoted, or in the regulation referred to, which gives a permit of delivery the status of an entry, the requirements of which are given in section 484 of the tariff act. That section provides, among other things, that an entry must be in writing; that it must be accompanied by a bill of lading and an invoice, or a bond given for the production thereof; and that it must give the quantity of the merchandise and the value thereof. If the witness made a "preliminary entry" on November 30, as he testified, there are no written documents in the record to substantiate his statement. He may have considered that the conversation he had with the customs officers constituted the making of a "preliminary entry." Exhibit 3 contains the consumption entry, but it was not filed until December 3, 1940.

We are of opinion that merely bringing the potatoes into the port of entry on November 30 and the withdrawing of part of the shipment on a special permit are not sufficient to entitle the plaintiff to the reduced rate of duty which expired on that day under the provisions of the trade agreement with Canada, published in T. D. 49752. That principle was settled by this court in the case of *F. J. Benkart & Co., Inc.* v. *United States*, 2 Cust. Ct. 466, C. D. 177, which related to a shipment of seed potatoes. The trade agreement with Canada then in force, published in T. D. 48033, provided that such merchandise when entered for consumption from December 1 to the last day of the following February should be dutiable at 60 cents per 100 pounds and when entered from March 1 to November 30, inclusive, should be dutiable at 45 cents per 100 pounds. The potatoes covered by the importation arrived on November 30, 1936, or prior thereto, and the importer filed the entry thereof at the customhouse on November 30 at 1 o'clock in the afternoon. The entry papers were numbered and passed along to the person who approves such papers but they were not released by him until too late for the importer to pay the duties before 4:30 in the afternoon, the official closing hour of the customhouse. The court held that since the duties were not paid on November 30 the entry was not completed on that day, and therefore the goods were not entered on November 30. The court said:

The entry not having been completed by the payment of duties and issuance of a delivery permit, these goods were not "entered for consumption" on Novem-

ber 30, 1936, and therefore were not entitled to the rate of 45 cents per 100 pounds claimed by the plaintiff.

Another case of similar import is *Tassini & Salisch-Parver, Inc.* v. *United States,* 6 Cust. Ct. 571, Abstract 45512. That case covered fresh tomatoes which were the product of Cuba. Under the provisions of the trade agreement with Cuba (T. D. 47232) a lower rate of duty on such merchandise went into effect on December 1. The entry was dated November 30, 1936, but the importing vessel did not arrive until December 1 and the duty was paid on that day. The court held that the entry was not completed until the duty was paid, and therefore the merchandise was imported and entered on December 1. The court cited the following decisions: *United States* v. *Cordero,* 1 Ct. Cust. Appls. 107, T. D. 31114; *Vandegrift & Co.* v. *United States,* 9 Ct. Cust. Appls. 112, T. D. 37978; *United States* v. *Cronkhite Co.,* 9 Ct. Cust. Appls. 129, T. D. 37980; *Kee Co. et al.* v. *United States,* 13 Ct. Cust. Appls. 105, T. D. 40943; *Spencer Lens Co.* v. *United States,* T. D. 43146, 55 Treas. Dec. 107.

The same principle was followed in *John A. Conkey & Co.* v. *United States,* Abstract 48554, which covered eggplant imported from Cuba. The court held that the merchandise should be assessed at the rate in force at the time the duties were paid.

We do not consider that there is any merit in the claim of counsel for the plaintiff that the potatoes should be held dutiable at 37½ cents per 100 pounds because the importer was influenced by the customs officers to make what his witness described as a "preliminary entry," rather than a consumption entry, on November 30, with the understanding that he would be entitled to pay duty on the potatoes at the lower rate. A similar contention was made in *Jacksonville Paper Co., a Corporation* v. *United States* (30 C. C. P. A. 159, C. A. D. 228.) In that case the importing company claimed that it was influenced by the customs officials to make entry at a value higher than the dutiable value of the goods, and therefore the entry was made under duress and should be considered as having been made at the lower value. The decision of the court on that point is summarized in the syllabus as follows:

Although importer may have been "influenced" by the customs officials to make the entry as it did, there is nothing of evidence to justify the conclusion that it was misled as to its legal rights by anything which was said to its agents by such officials. It was not the duty of the officials fully to advise them. They could not have bound the Government, nor was importer bound by their statements. It was importer's duty to protect its rights, which it readily might have done by making a test case of the first entry.

Following the principles enunciated in the decisions cited, we hold that the potatoes herein involved were not entered on November 30, 1940, and were therefore not entitled to the rate of duty at 37½ cents per 100 pounds provided for in the trade agreement with Canada, *supra.*

The protest is overruled.   Judgment will be rendered in favor of the defendant.