(C. D. 1212)

PAGE N. GOFFIGON *v.* UNITED STATES

United States Customs Court, Third Division

(Decided February 14, 1950)

*John F. Kavanagh* for the plaintiff.

*David N. Edelstein,* Assistant Attorney General (*Joseph E. Weil* and *William J. Vitale,* special attorneys), for the defendant.

Before CLINE, EKWALL, and JOHNSON, Judges; JOHNSON, J., not participating

CLINE, Judge: This is a protest against the collector's assessment of duty on lima beans imported from Cuba at 2⅗ cents per pound under paragraph 765 of the Tariff Act of 1930, as modified by the exclusive trade agreement with Cuba, T. D. 51819. It is claimed that the merchandise should have been assessed with duty at 1⅗ cents per pound under the said trade agreement as "other" lima beans.

The pertinent provisions of the tariff act as so modified are as follows:

PAR. 765 [as modified by the exclusive trade agreement with Cuba, T. D. 51819]. Lima beans, green or unripe:

When entered during the period from June 1 to October 31, inclusive, in any year_____ 2⅖¢ per lb.

Other_____ 1⅗¢ per lb.

The protest was made against the collector's refusal to accept the entry on May 31, 1948, and the subsequent application of the higher rate of duty, on the grounds that Monday, May 31, 1948, was not a legal holiday and that the shipper and the importer had no prior

knowledge that the customhouse would be closed on that day. The collector's report on protest refers to "Section 1 N 7 which is the footnote on the bottom of page 8 C R 1943." Section 1.8 of the Customs Regulations of 1943, as amended, provides as follows:

**1.8 Hours of business.**—(a) Except as hereinafter specified, each customs office shall be open for the transaction of general customs business between the hours of 8:30 a. m. and 5 p. m. on all days of the year except Saturdays, Sundays, and national holidays.[7]

At the trial counsel for the plaintiff moved to amend the protest by adding statements that the collector erred as follows:

1. In refusing entry as of May 31st, 1948, he failed to comply on acceptance of entries as enunciated in *Hale Company* v. *U. S.* 11 C. C. A. 508 and in *Gallagher* v. *U. S.* 1 C. C. A. 69.

2. In refusing to consider that this merchandise was imported as of either May 30, 1948 or May 31, 1948, and in so refusing he was acting contrary to law as enunciated in—

> *U. S.* v. *Shallus*, 2 C. C. A. 332
> *Mills & Gibb Corp.* v. *U. S.* 13 C. C. A. 72
> *U. S.* v. *Field*, 14 C. C. A. 406
> *U. S.* v. *Sandoz*, 14 C. C. A. 21
> *Grumbacher* v. *U. S.* T. D. 40073
> *Cunard* v. *Mellon*, 262 U. S. 100 at p. 122

3. In refusing entry on May 31st, 1948, he ignored the provisions of Section 448 of the Tariff Act, insofar as said section refers to Sundays and holidays.

4. In refusing entry on May 31st, 1948, he ignored the intent of Congress as set forth in the preamble of the Cuban Trade Agreement, T. D. 47232, and T. D. 51819, section 3, which in effect states the purpose of the Treaty was to strengthen the traditional bonds of friendship and commerce between the two countries.

Counsel for the Government objected to the motion on the grounds that the proposed amendment was multifarious and did not comply with the requirements as to a protest, and that insufficient notice had been given. The judge on circuit reserved decision for the division. While some of the matter in the proposed amendment might more properly be left to the brief, it does set forth reasons for the objection to the collector's action and therefore complies with section 514 of the Tariff Act of 1930. Since the motion was made prior to the first docket call, it is timely. Rules of the United States Customs Court, adopted May 29, 1936, rule 9 (2). The motion is granted.

Robert E. Lund, called as a witness by the plaintiff, testified that he was a customhouse broker and steamship agent; that he made a verbal application for a special permit for delivery of perishable articles on May 30, 1948; that the application was granted and the

---

[7] The national holidays are January 1, February 22, May 30, July 4, the first Monday in September, November 11, the fourth Thursday in November, and December 25. If a holiday falls on Sunday, the following day will be observed. (E. O. No. 1076, May 22, 1909.) Other days may be designated as national holidays by Executive order of the President.

merchandise herein was unladen from the vessel on May 30; that he prepared the consumption entry herein on May 31, 1948; that he presented it at the entry desk of the customhouse at West Palm Beach in the early afternoon of that day; that the customhouse was physically open and some employees were there; that he tendered the entry to one of the employees, either Mr. Faircloth or Mr. Boggs; that he was advised that the entry could not be accepted that day as it was a holiday and that it would be passed the following business day; that there are eight or nine employees at the said customhouse and three or four were present on May 31; that one man may do the work of three or four different employees; that the date in the upper right-hand corner of the consumption entry, June 1, 1948, indicates the date the entry was accepted.

Emmett C. Faircloth testified that he is the deputy collector in charge of the customhouse in West Palm Beach; that the vessel which brought in this merchandise came into customs jurisdiction at 12:30 p. m. on May 30, 1948; that that was the hour the vessel tied to the dock; that unlading follows immediately after boarding which takes about 40 minutes; that Monday, May 31, 1948, was celebrated as Decoration Day in the port of West Palm Beach; that the customhouse was officially closed for the transaction of business on that day; that it may have been physically open; that the date, June 1, 1948, in the upper right-hand corner of the consumption entry indicates the day the entry was officially accepted and passed and duties paid thereon; that his job is a 7-day in the week job; that there is someone on duty practically every day in the week, Sundays and holidays included; that the employees on duty are ordinarily inspectors who are lading or unlading vessels; that the employees are not confined to one particular job per person; that the customhouse is open for certain purposes 7 days a week; that he had never accepted the type of entry in question on a Sunday; that informal entries, transit entries, and baggage declarations have been accepted on Sundays; that the regular hours and days for the transactions of business are 8:30 a. m. through 5 p. m., Monday through Friday, except national holidays; that on holidays the office is not officially open at any time; that on Saturdays it is open for entrance and clearance of planes and vessels, but no entries are accepted or normal customs business carried on; that May 31, 1948, was a Monday; that the office was closed for the transaction of customs business; that employees who worked on Sundays or holidays were compensated for overtime; that perishable merchandise is released upon the filing of the proper application by the importer; that it is examined and released on holidays or Sundays, or at night. After an inspection of his records, Mr. Faircloth testified that Chief Inspector Boggs, Inspectors Gougan and Stephenson, and Marine Officer Paul C. Davis were on duty on May 31, 1948, for the purpose

of boarding and discharging vessels; that Chief Inspector Boggs was the only one in the group who was familiar with the acceptance and passage of entries; that the men named were in and out of the customhouse all during that day; that there was no record indicating that Mr. Lund presented this entry on May 31; that inspectors were authorized to accept informal entries on Saturdays, Sundays, and holidays, but not consumption entries; that Mr. Boggs was in charge on that day; that he is authorized to accept entries but not on Saturdays, Sundays, and holidays.

George A. Boggs, customs inspector, testified that he had no recollection of having seen or having a conversation with Mr. Lund on May 31, 1948, at the customhouse; that he was not authorized to accept consumption entries similar to the one in this case on Saturdays, Sundays, or holidays.

It is claimed that the merchandise should not have been assessed with duty at the rate applicable between June 1 and October 31, inclusive, but should have been assessed at the rate applicable at other times. This claim is based on the contention that the merchandise was actually imported into the commerce of the country on May 30, 1948; that a consumption entry was tendered in the afternoon of May 31, 1948; that such entry should have been accepted although it was a legal holiday on the grounds that the customhouse was open for business and that when a Sunday or a holiday is the last day of a period of time allotted for the performance of an act, such act may be done on the following day.

It appears from the evidence that the merchandise was imported on May 30, 1948. However, the date of importation is not controlling since the reduced rate is not applicable to lima beans "when *entered* during the period from June 1 to October 31, inclusive, in any year." [Emphasis supplied.] It is therefore the day of entry which determines the rate of duty. *F. B. Wilcon* v. *United States*, 13 Cust. Ct. 96, C. D. 876; *F. J. Benkart & Co., Inc.* v. *United States*, 2 Cust. Ct. 466, C. D. 177; *Tassini & Salisch-Parver* v. *United States*, 6 Cust. Ct. 571, Abstract 45512; *John A. Conkey & Co.* v. *United States*, 11 Cust. Ct. 217, Abstract 48554; *J. P. Navailles* v. *United States*, 1 Cust. Ct. 17, C. D. 5; *William J. Oberle, Inc.* v. *United States*, 4 Cust. Ct. 319, C. D. 351.

*F. B. Wilcon* v. *United States*, *supra*, involved a provision of the trade agreement with Canada, T. D. 49752, fixing a duty on potatoes at 37½ cents per 100 pounds when entered for consumption during the period from March 1 to November 30, inclusive, in any year, and at 60 cents per 100 pounds when entered from December 1 to the last day of the following February, inclusive. The merchandise arrived on November 30, 1940, and part of it was delivered on that day pursuant to a special delivery permit, but the consumption

entry was not filed until December 3, 1940. It was held that since the potatoes were not entered on November 30, 1940, they were not entitled to the reduced rate of duty.

This rule has been strictly construed by the courts. In *F. J. Benkart & Co., Inc.* v. *United States, supra,* the entry papers were filed by the importer on November 30 (the last day for the reduced rate), but were not released by the person who approves such papers until 4:30 p. m., the official closing hour of the customhouse at that time, too late for the importer to pay the duties. It was held that since the duties were not paid on November 30, the entry was not completed on that day and the goods were not entitled to the reduced rate.

In *J. P. Navailles* v. *United States, supra,* the merchandise did not arrive within the port of New Orleans until after closing hours on Saturday, February 27, 1937, and entry was not filed until March 1, 1937. The Customs Regulations of 1931, in effect at the time of importation, provided that customs offices should be open between 9 a. m. and 4:30 p. m. on all days of the year, except Saturdays, Sundays, and national holidays, and on Saturdays, except national holidays, from 9 a. m. to 1 p. m., and it was held that such regulations were reasonable. The court said (p. 19):

> * * * In the case before us the trade agreement, entered into under authority of a statute the validity of which is not questioned in this proceeding, in effect provided that in order to obtain the benefit of the rate of duty therein levied on tomatoes, the merchandise must be entered for consumption. These tomatoes were not entered for consumption prior to the last day of February 1937, the limitation fixed therein. Inasmuch as we have found that entry was not prevented by any illegal act on the part of the Government officials, we hold that the tomatoes are not entitled to the rate of duty provided for in said trade agreement.

The regulations in effect at the time of the within importation provided that the customs office should be open for the transaction of general customs business between the hours of 8:30 a. m. and 5 p. m., except Saturdays, Sundays, and national holidays. There is nothing unreasonable in this regulation nor is it contrary to law. The merchandise herein arrived on May 30, 1948 (a Sunday), and entry was presented on May 31, 1948 (a holiday). Such entry was not accepted nor were estimated duties paid until June 1, 1948. Since the filing of the entry was not prevented by any illegal act on the part of customs officials, the merchandise is not entitled to entry at the reduced rate of duty.

The record in the instant case shows that the customhouse at West Palm Beach was physically open on May 31, 1948, for the use of inspectors who were on duty in connection with the boarding and discharging of vessels. However, Mr. Faircloth testified that the office was not open for the transaction of general customs business and that

the officials on duty were not authorized to accept consumption entries on Saturdays, Sundays, and holidays. The fact that employees were present at the customhouse does not mean that it was open for the transaction of all business or that such employees were authorized to accept entry papers. *Gallagher* v. *United States*, 1 Ct. Cust. Appls. 69, T. D. 31034; *Psaki Bros.* v. *United States*, 3 Ct. Cust. Appls. 479, T. D. 33122.

In *Gallagher* v. *United States, supra,* a withdrawal entry was brought into the customhouse at 5:30 p. m. and tendered to a deputy collector who was in his office. The deputy collector refused to accept it since the cashier, ordinarily the proper person to receive the money paid for duties, was not in the customhouse and there were only a few of the entry clerks still there. The regulations then in effect provided that customs offices should be kept open for business between 9 a. m. and 4:30 p. m. on all days, except Sundays and certain holidays. It was held that the hours fixed were wholly reasonable; that the importers could have no complaint against the collector for refusing their tender at 5:30 p. m. unless the customhouse was actually open for business when the tender was made and refused. The court said (p. 71):

Upon the first point, however, the evidence is that when Mr. Gallagher went into the customhouse the cashier and most of the entry clerks had gone, and that the office was not open for the general transaction of business, and that it was not meant that it should be. The mere fact that Mr. Gallagher could enter, and that there was a deputy collector and several clerks in the office when he went in, signifies very little. For all that appears the door may have been left open for temporary convenience, and the few officials there may have remained to close up the business of the day, or may have tarried for their mere personal accommodation.

In *Psaki Bros.* v. *United States, supra,* the 10-day limit then in effect for filing a protest expired on a Sunday. The protest was received at the customhouse by a watchman then on duty at 6:48 p. m. on Saturday. It was held that the watchman had implied authority to receive mail sent to the customhouse after hours and to turn it over to some one for delivery to the addressees; that authority to receive protests had not been delegated to him; that delivery to him was not delivery to the collector or his authorized representative within the 10 days allowed for filing protests; and that therefore the protest was untimely.

Plaintiff contends that where a Sunday or a holiday is the last day of a period of time allotted for the performance of an act, such act may be performed on the following business day, and that since May 31, 1948, was a holiday, an entry which should have been filed on that day might have been filed on June 1, 1948. Such a rule has

been applied in some circumstances and in some jurisdictions (*Street* v. *United States*, 133 U. S. 299; *Monroe Cattle Company* v. *Becker*, 147 U. S. 47; *Sherwood Bros., Inc.* v. *District of Columbia*, 113 F. 2d 162, and cases there cited), but it has not been applied in customs cases, except where specially provided for.

In *Wm. Larzelere & Co.* v. *United States*, 20 Treas. Dec. 45, T. D. 31202, the date for the termination of a reciprocity treaty with France fell on October 31, 1909, a Sunday. The merchandise was imported on November 1, 1909, and it was claimed that since the termination date fell on a·Sunday, the agreement was in full force and effect throughout the next day. The court overruled the protest, stating (p. 46):

\* \* \* The rule of law is that, in computing the time wherein the law requires an act to be done, if the last day falls upon Sunday, unless there is some statutory provision excluding that day, the courts have no power to extend the time beyond the period fixed by the law.

In *Hermann* v. *United States*, 66 Fed. 721, it was held that in computing the 10 days within which the order of the collector for the return of goods to the public stores must be served, if the 10th day fell on Sunday, service of the notice on the following Monday was not sufficient.

The same rule has been consistently applied in regard to the time within which protests may be filed. Where the last day falls upon a Sunday, service on the following Monday is untimely. *Shefer* v. *Magone*, 47 Fed. 872; *Aldo Bolognesi* v. *United States*, 9 Treas. Dec. 938, T. D. 26414; *Psaki Bros.* v. *United States, supra*; *Joseph E. Seagram & Sons, Inc.* v. *United States*, 15 Cust. Ct. 95, C. D. 951.

Where any other rule is to be applied, specific provision has been made. See section 448, Tariff Act of 1930; Rules of the United States Customs Court, adopted May 29, 1936, rule 3; Rules of the United States Customs Court, effective November 1, 1949, rule 3 (s); rule 37.

Since the entry herein was not accepted nor duties paid until June 1, 1948, and since the filing of the entry was not prevented by any illegal act on the part of customs officials, we hold that the merchandise was properly assessed with duty at the rate applicable to lima beans entered on June 1, namely, 2⅖ cents per pound under paragraph 765 of the Tariff Act of 1930, as modified by the exclusive trade agreement with Cuba, T. D. 51819.

The protest is overruled and judgment will be rendered for the defendant.