(C. D. 1215)

INTERNATIONAL PAPER COMPANY *v.* UNITED STATES

United States Customs Court, First Division

(Decided March 1, 1950)

*Fred E. Hanscom* for the plaintiff.

*David N. Edelstein*, Assistant Attorney General (*Daniel I. Auster* and *Chauncey E. Wilowski*, special attorneys), for the defendant.

Before OLIVER, COLE, and MOLLISON, Judges; COLE, J., concurring

MOLLISON, Judge: This is an action against the United States in which plaintiff seeks to recover customs duties paid on the importation of 67,464 board feet of sawed lumber imported from Canada and entered at Boundary Cottage, Maine, which is a subport under the headquarters port of Holeb-Jackman, Maine. That part of the merchandise in question which consisted of sawed spruce and fir lumber was assessed with duty at the rate of 50 cents per thousand feet, board measure, under the provisions of paragraph 401 of the Tariff Act of 1930 (19 U. S. C. § 1001, par. 401), as modified by the Canadian Trade Agreement, T. D. 49752, plus tax or duty at the rate of $1.50 per thousand feet, board measure, under the provisions of section 601 (c) (6) of the Revenue Act of 1932, which has been codified as section 3424, Internal Revenue Code (26 U. S. C. § 3424), as modified by the same trade agreement. The remainder of the merchandise consisted of sawed birch lumber which was passed free of duty under paragraph 1803 of the Tariff Act of 1930 and assessed with tax or duty under section 3424 of the Internal Revenue Code, as modified as stated above.

On behalf of the plaintiff it is claimed that the imported lumber was entitled to free entry under Presidential proclamation No. 2708 of October 25, 1946 (11 F. R. 12695; 81 Treas. Dec. 231, T. D. 51565) which, during its lifetime, authorized exemption from duty of lumber of the kinds here involved. The exemption authorized by the said Presidential proclamation was terminated by Presidential proclamation 2735 (CFR 1947 Supp. Titles 1–7, p. 50) as of August 15, 1947.

The facts are not in dispute. The lumber involved herein was brought into Maine from Canada on trucks and on August 12, 1947, passed through the customs station at Boundary Cottage, and by that

means to the place of business of the International Paper Company at Rumford, Maine. On that date, August 12, 1947, the plaintiff's agent presented to the deputy collector of customs in charge at Boundary Cottage Station a consumption entry on customs Form 7501, showing the merchandise to be entitled to free entry under Presidential proclamation No. 2708, together with the required consular invoice. It is not disputed that these papers were properly filled out and duly executed and delivered to and filed with the deputy collector of customs in charge of the customs station at Boundary Cottage, and that that officer received the said papers.

It also appears that the deputy collector of customs at Boundary Cottage Station signed the consumption entry permit, customs Form 7501-A, as well as the report of examination on the reverse side stating that the articles covered by the permit had been examined and released, all under date of August 12, 1947.

For some reason which is not explained in the record, there was a delay on the part of the customs officers in transmitting the entry and accompanying papers from the Boundary Cottage Station to the headquarters port at Holeb-Jackman. Six days elapsed before the papers were received at the headquarters port on August 18, 1947. Free entry of lumber such as that in question ceased with the termination of Presidential proclamation No. 2708 on August 15, 1947.

Upon receipt of the entry and accompanying papers at Holeb-Jackman on August 18, 1947, the date "Aug 18 1947" was rubber-stamped thereon and the number H 054 was placed upon the entry. It should be noted that the consumption entry and the consumption entry permit each bore the date "8/12/47" in indelible pencil after the word "Date" printed thereon, which it is conceded by the defendant's counsel was on the papers when received at Boundary Cottage.

It is contended by the defendant that the entry was not "formally" accepted until its arrival at the headquarters port and it had been "officially numbered and dated" at that place, and in support of that contention the defendant relies upon section 8.4 (b) of the Customs Regulations of 1943, which read at the time of importation here involved as follows:

(b) The date on which the entry is accepted by the collector of customs shall be considered the date of entry but no entry shall be officially accepted until the importer has performed all acts required of him which are necessary to secure the issuance of an order for the examination of the package designated for examination. The date of official numbering, which shall be noted on each entry, shall in each case correspond with the date of acceptance, thus establishing the date of entry.

These regulations have since been changed, as will be discussed, *infra*.

Counsel for the defendant cites the cases of *F. B. Wilcon* v. *United States*, 13 Cust. Ct. 96, C. D. 876, and *F. J. Benkart & Co., Inc.* v.

*United States*, 2 Cust. Ct. 466, C. D. 177, cited in the former case. In the *Wilcon* case the court held that merely bringing potatoes into a port of entry and withdrawing part of the shipment on a special permit did not constitute an entry and therefore did not entitle the plaintiff to the reduced rate of duty under the provisions of a trade agreement with Canada, the entry itself not having been made until December 3, 1940, several days after November 30, 1940, the date of expiration of the trade agreement entitling the importer to a lower duty. No question of official numbering, dating, and acceptance of the entry was involved in the case and it is no authority giving any support to the contentions of the defendant in this case.

In the case of *F. J. Benkart & Co., Inc.* v. *United States, supra,* the court held that the entry was not completed because the duties were not paid and the delivery permit issued before the expiration of the last day on which the importer was entitled to reduced rates under the Canadian Trade Agreement of November 30, 1935; whereas in the instant case the entry was completed and the merchandise released from customs control and custody at a time when sawed lumber still had a duty-free status.

Moreover, in the *Benkart* case the entry papers had been numbered and the entry "accepted and released," so that the question of numbering, dating, and "formal" acceptance was not involved in the holding of the case. Both cases relied upon by the defendant's counsel present situations where the entries were not completed before the expiration of the period of time during which the importers were entitled to a reduced rate of duty, and the two cited cases are thus distinguishable from the case at bar both on the facts and the law applicable thereto.

Section 8.4 (*b*) of the Customs Regulations of 1943, as it existed at the time of importation here involved, is likewise no authority sustaining the contention of the defendant and its counsel in this case. There was nothing in this regulation which provided that there must be a "formal" acceptance of an entry before entry was complete or that there might be a "formal" acceptance which might be lawfully made at a date and time *subsequent* to the date of actual filing with, and actual acceptance of the entry by, the deputy collector of customs or other customs officer authorized to receive the same. On the contrary, the regulation plainly stated that the date of the entry shall be the date when the entry is accepted. Nor did the regulation provide that the date of the entry was not established until the entry was officially numbered, but it provided merely that the date of entry was established by its acceptance and that the date of official numbering "shall in each case correspond with the date of acceptance."

A fair and reasonable interpretation of the regulation compels the conclusion that since the date of acceptance of the entry was August 12, 1947, the date of "official numbering" which should have been noted on the plaintiff's entry by the customs officials at Holeb-Jackman was August 12, 1947, which date would then have corresponded with the date of acceptance of the entry and of the importation of the merchandise.

There is nothing to show that the deputy collector of customs in charge at Boundary Cottage was not authorized to accept entries. In fact, under sections 27.25 and 27.26 of the Customs Manual, Edition of 1943, it would appear that he possessed all of the powers of the collector at the headquarters port in that regard. So far as pertinent, those sections read as follows:

27.25  **Deputy collectors.**—(a) Deputy collectors shall perform the functions prescribed by law for collectors, subject to such limitations and restrictions as are prescribed by the regulations and this manual.

*　　　*　　　*　　　*　　　*　　　*　　　*

27.26  **Deputy collectors in charge.**—(a) The deputy collector in charge of a port of entry under the general supervision and direction of the collector shall receive entries of merchandise, collect duties, fees, and other moneys, enter and clear vessels, issue documents to vessels, and perform all other services prescribed by law or regulations, or by the instructions of the collector.

No duties were demanded by the deputy collector at Boundary Cottage when the merchandise was entered and was released into the commerce of the country, and it is fair to assume that the deputy collector at that station regarded the lumber as free of duty under Presidential proclamation No. 2708.

It is undisputed that the plaintiff made and filed a proper consumption entry, together with all required documents, for the sawed lumber at Boundary Cottage Customs Station on August 12, 1947, a date and time when the merchandise had a duty-free status under Presidential proclamation No. 2708; it is not disputed that the entry was received by the deputy collector in charge who, after examination, on the same day released the merchandise which passed from customs custody and control into the control and custody of the importer. Nor is it challenged that physically the entry papers after delivery to the deputy collector at Boundary Cottage were always under the sole physical as well as the legal control of the customs officials and that nothing remained for the importer or for the customs officials to do in the matter of completion of the entry.

We therefore conclude that when these acts were done on August 12, 1947, the plaintiff's consumption entry was officially accepted by and for the collector of customs as of that date, plaintiff having complied with every part of the law and regulations respecting the impor-

tation and entry of merchandise which was binding upon it and which it was possible for it to do.

The provision for official numbering in section 8.4 (*b*) of the Customs Regulations of 1943, *supra*, as they existed at the time of importation of the involved merchandise, was a mere bookkeeping incident to the entry and did not go to the essence of the act of entry or of acceptance of entry by the collector. As has been said, it is noted that the regulation required that the date of official numbering "shall in each case correspond with the date of acceptance," which indicates that the date of official numbering was controlled by the date of acceptance, and *not* the reverse, i. e., that the date of acceptance was controlled by the date of official numbering.

That this was and is the intent of the regulations is indicated by the revision of section 8.4 (*b*) in August 1948, causing it to read, so far as pertinent, as follows:

(*b*) The date of entry is the date on which an entry is officially accepted by a collector of customs. *A formal consumption entry or a warehouse entry shall be officially accepted on the date that the importer has completed the performance of all acts required of him which are necessary to secure the issuance of a consumption entry permit or a permit for the transfer of the merchandise to a bonded warehouse.* The date of official numbering, which shall be noted on each entry, shall in each case correspond with the date of acceptance, thus establishing the date of entry. [Italics added.]

There is no dispute that all of the acts called for in the italicized language quoted above were performed on August 12, 1947, by the importer in this case, and, in addition, the consumption entry permit was issued and the merchandise examined and released.

We therefore hold that the lumber at bar was imported and entered for consumption on August 12, 1947, and that it was entitled to free entry under Presidential proclamation No. 2708 as claimed in plaintiff's protest.

Judgment will therefore issue accordingly.

### CONCURRING OPINION

COLE, Judge: My views set forth in *Geo. S. Bush & Co., Inc., et al.* v. *United States*, 22 Cust. Ct. 158, C. D. 1175, questioning the jurisdiction of the division to decide a case somewhat similar to these proceedings, continue as the minority expression from the division. Under the practice and procedure of the court and the rules applicable thereto, much litigation before the court is dependent upon my participation in a decision of the same. Adhering, however, to my views expressed in the *Bush* case, *supra*, but for the purpose of expediting the work of the court, I am joining my colleagues in the disposition of this case, and concur in the opinion and judgment attached thereto.