UNITED STATES *v.* MUSSMAN & SHAFER, INC. (No. 4737)[1]

United States Court of Customs and Patent Appeals, January 14, 1953

*Charles J. Wagner*, Acting Assistant Attorney General (*Richard F. Weeks*, special attorney, of counsel), for the United States.

*Tompkins & Tompkins* (*Allerton deC. Tompkins* of counsel) for appellee.

[Oral argument December 9, 1952, by Mr. Weeks and Mr. Allerton deC. Tompkins]

Before GARRETT, Chief Judge, and WORLEY and JACKSON (retired), Associate Judges

GARRETT, Chief Judge, delivered the opinion of the court:

The Government here seeks modification of a judgment entered by the First Division of the United States Customs Court in conformity with its decision, 27 Cust. Ct. 180, C. D. 1367, sustaining in part importer's protest by which recovery is sought of certain duties assessed and collected by the Collector of Customs at the port of Cincinnati, Ohio, on certain birch plywood imported from Finland.

The merchandise arrived on a ship at the port of New York City on September 16, 1946, and was entered at that port under an I. T. (Immediate Transportation) entry, provided for in section 552 of the Tariff Act of 1930. It was not appraised at New York but was laden on nine railroad cars and transported in bond to Cincinnati. The first car arrived at Cincinnati October 17, 1946, and on October 18, 1946, a consumption entry was filed at the Cincinnati port which covered all the plywood included in the nine cars. The collector classified the merchandise and assessed duty at 25 per centum ad valorem under paragraph 405 of the Tariff Act of 1930, as modified by the Reciprocal Trade Agreement with Finland, embodied in T. D. 48554. The estimated duties seem to have been paid at that time and a delivery permit issued, but evidently, as hereinafter stated, certain functions remained to be performed by customs officials before actual release of the merchandise from customs custody.

Other cars arrived in Cincinnati on different dates thereafter and the merchandise was released from customs custody on successive days. A table, or schedule, received in evidence as importer's Exhibit 1, which we reproduce, was included in the decision of the court.

It shows the numbers of the railroad cars in which the merchandise was shipped to Cincinnati, the date of arrival of each car in Cincinnati, and the dates of release of the merchandise from customs custody. The first column of figures 1 to 9, inclusive, has been added by us for convenience of reference. The letters preceding the numbers in the second column indicate the names of the railway companies ("Great Northern," "New York Central," "Seaboard Air Line," etc.) to which the cars belonged.

| Railroad Car | Date of arrival at Cincinnati | Date released from customs custody |
|---|---|---|
| 1. GN 42419 | 10/17/46 | 10/21/46 |
| 2. ATSF 151104 | 10/23/46 | 10/23/46 |
| 3. NYC 177656 | 10/22/46 | 10/23/46 |
| 4. SAL 15433 | 10/24/46 | 10/25/46 |
| 5. SAL 28616 | 10/24/46 | 10/25/46 |
| 6. SOU 12843 | 10/28/46 | 10/28/46 |
| 7. PA 95587 | 10/31/46 | 10/31/46 |
| 8. NYC 135149 | 10/31/46 | 10/31/46 |
| 9. ATSF 147133 | 10/31/46 | 10/31/46 |

The Customs Court held the merchandise which was transported to Cincinnati in the shipments which we have numbered 1, 2, and 3 to be dutiable as assessed by the collector, and the importer took no appeal from that decision. In the brief on its behalf before us, the concession is made that "the trial court committed no error in sustaining the collector's action as to such merchandise."

As to the plywood in the shipments which we have numbered 4, 5, 6, 7, 8, and 9, the Customs Court held that the collector's assessment was erroneous and sustained importer's protest claim that the plywood was entitled to entry free of customs duty by reason of a proclamation of the President of the United States and the regulations promulgated by the Secretary of the Treasury, both made in conformity with specific legislative action, as hereinafter recited.

There was not included in the appeal taken on behalf of the Government the holding of the Customs Court that the merchandise included in shipments Nos. 6, 7, 8, and 9 was entitled to free entry, and the brief for the Government before us states that "appellant not having assigned this determination as error, the question is not presented for review."

So, there is involved before us the dutiable status of only that merchandise which was included in shipments Nos. 4 and 5. The two cars containing it (Seaboard Airline freight cars Nos. 15433 and 28616) arrived in Cincinnati October 24, 1946, and the plywood was released from customs custody the following day, October 25, 1946—the day on which the proclamation of the President was made.

The proclamation of the President which constituted the basis upon which the decision of the Customs Court was predicated was based upon section 318 of the Tariff Act of 1930 which appears under "Title III–Special Provisions Part I–Miscellaneous" of the Act. It reads:

Sec. 318—Emergencies.

Whenever the President shall by proclamation declare. an emergency to exist by reason of a state of war, or otherwise, he may authorize the Secretary of the Treasury to extend during the continuance of such emergency the time herein prescribed for the performance of any act, and may authorize the Secretary of the Treasury to permit, under such regulations as the Secretary of the Treasury may prescribe, the importation free of duty of food, clothing, and medical, surgical, and other supplies for use in emergency relief work. The Secretary of the Treasury shall report to the Congress any action taken under the provisions of this section.

On May 22, 1946, Congress enacted a measure entitled "Veterans'. Emergency Housing Program" (60 Stat. 207, Ch. 268, 50 U. S. C., sections 1821–1823), in which it was declared, inter alia:

Sec. 1821 (a) The long-term housing shortage and the war have combined to create an unprecedented emergency shortage of housing, particularly for veterans of World War II and their families. * * *.

The act further provides:

Sec. 1822 (c) The executive agencies of the Government shall exercise their emergency powers and other powers for the purpose of aiding in the solution of the problems created by the existing housing emergency, the alleviation of which is vital to an orderly transition from war to peace.

Conforming to the foregoing legislation the President, on October 25, 1946, issued the following proclamation:

WHEREAS the long-term housing shortage and the war have combined to create an unprecedented emergency shortage of housing, particularly for veterans of World War II and their families; and

WHEREAS section 1 of the Veterans' Emergency Housing Act of 1946 recognizes the aforesaid unprecedented emergency; and

WHEREAS it is imperative that immediate action be taken on a temporary basis to increase the available supplies of timber, lumber, and lumber products for housing purposes:

Now, THEREFORE, I, HARRY S. TRUMAN, President of the United States of America, under and by virtue of the authority vested in me by the Constitution and laws of the United States, and in particular by section 318 of the Tariff Act of 1930 (46 Stat. 590, 696), do hereby declare an emergency to exist, and do hereby authorize the Secretary of the Treasury to permit, until the termination of the provisions of the Veterans' Emergency Housing Act of 1946, or until the President shall have declared that the emergency declared herein has terminated, whichever shall first occur, under such regulations and subject to such conditions as the Secretary may deem necessary, the importation free of duty of any articles which the Housing Expediter designates and certifies as timber, lumber, or lumber products suitable for the construction or completion of housing accommodations. Presidential proclamation No. 2708, 11 F. R. 12695; 81 Treas. Dec. 231, T. D. 51565.]

The pertinent parts of the Regulation, T. D. 51565, issued by the Acting Secretary of the Treasury for the administration of the proclamation, read:

Sec. 53.3 Timber, lumber, and lumber products specified by Housing Expediter admissible free of duty and import tax.—(a) Pursuant to the authority contained in the proclamation of the President dated October 25, 1946, collectors of customs are hereby authorized to admit free of duty, and import taxes provided for in section 3420, Internal Revenue Code, if entered for consumption or withdrawn from warehouse for consumption on and after the date of the proclamation and until the termination of the provisions of the Veterans' Emergency Housing Act of 1946, or until the President shall have declared that the emergency declared in the proclamation has terminated, whichever shall first occur, the classes of timber, lumber, and lumber products set forth in the following list which have been designated and certified by the Housing Expediter as timber, lumber, or lumber products suitable for the construction and/or completion of housing accommodations:

\* \* \* \* \* \* \*

3. Plywood, classifiable under paragraph 405, Tariff Act of 1930.

\* \* \* \* \* \* \*

(b) The Housing Expediter may designate and certify under the proclamation other articles of or classes of articles, such as millwork as defined in Civilian Production Administration Order L–359, paragraph 5, of October 18, 1946, prefabricated and ready-cut houses, portable houses, prefabricated panels for houses, and panelized parts, all the foregoing in chief value of wood. In such an event, the Housing Expediter will forward his certificate to the Secretary of the Treasury and the list in paragraph (a) will be amended, or he will forward a certificate covering each entry directly to the collector of customs. Collectors of customs are hereby authorized to grant entry free of duty, and import taxes provided for in section 3420, Internal Revenue Code, to articles covered by such certificates when the articles are entered for consumption or withdrawn from warehouse for consumption during the period prescribed in paragraph (a).

The entry of October 18, 1946, is shown to have been made by the importer without any knowledge that a Presidential proclamation under the statute was in prospect and the merchandise was entered as dutiable, the estimated duties paid and a permit for delivery issued. The permit, however, as stated in the brief on behalf of the Government before us, "shows on its face that before delivering the merchandise the inspector was required to draw a sample and measure the plywood."

The collector liquidated the entry as dutiable with respect to the entire shipment, "on the ground," the brief for the Government states, "that the merchandise was 'entered for consumption' on October 18th, the day the entry papers were filed."

It is said in the decision of the trial court:

. The word "importation" has been used in tariff statutes in two senses. On the one hand, it has been used to denote the time when the jurisdiction of the United States over merchandise brought into the country attaches. On the other hand, it has been used to denote the time when the status of the merchandise with respect to the duties chargeable thereon is to be determined. See *Washington*

*State Liquor Control Board* v. *United States*, 20 Cust. Ct. 173, C. D. 1104. From the context of the proclamation and the regulations, it is clear that the latter meaning is the one which applies here, and the procedure here adopted by the Secretary of the Treasury accords with that which generally applies when a change in the duty status of imported merchandise is made by law.

The trial court further said:

* * * Obviously, the decision in this case turns upon the meaning to be ascribed to the term "entered for consumption." The plaintiff contends that that term refers to a transaction which is not complete so that the goods may be said to have been "entered for consumption" until all of the acts and formalities required in connection with the entry of merchandise—including the filing of the entry papers and payment of estimated duties on the part of the importer, and acceptance of the entry and issuance of a delivery permit on the part of the Government—have been performed, *and, in addition, either the merchandise be present and available for delivery to the importer at the port of entry or be actually physically released to the importer.* The defendant contends that the term refers only to the filing of the entry document with the collector. [Italics quoted.]

In support of the foregoing, the court cited the decision of Judge Lacombe of the Circuit Court of Appeals, Second Circuit, in the case of *United States* v. *Legg*, 155 Fed. 930, and the therein cited case of *United States* v. *Cargo of Sugar*, 25 Fed. Cas. 288, in which latter case it was said, *inter alia:*

* * * The term "entry," in the acts of congress, is used in two senses. In many of the acts it refers to the bill of entry,—the paper or declaration which the merchant or importer in the first instance hands to the entry clerk. In other statutes it is used to denote, not a document, but a transaction,—a series of acts which are necessary to the end to be accomplished, viz. the entering of the goods.

The trial court, citing numerous of its own decisions and decisions of this court, points out that:

The decided cases are uniform in holding that in the absence of contrary statutory provision goods are not "entered" or "withdrawn" for the purpose of determining the duties applicable thereto until the transaction is complete by the payment of duties and the issuance of an unconditional delivery permit passing control of the goods to the importer or owner. See *Kee Co. et al.* v. *United States*, 13 Ct. Cust. Appls. 105, T. D. 40943; *Constance* v. *United States*, 11 Ct. Cust. Appls. 435, T. D. 39436; *United States* v. *Cronkhite*, 9 Ct. Cust. Appls. 129, T. D. 37980; *Five Per Cent Cases*, 6 Ct. Cust. Appls. 291, T. D. 35508; *Page N. Goffigon* v. *United States*, 24 Cust. Ct. 81, C. D. 1212; *International Paper Co.* v. *United States*, 24 Cust. Ct. 95, C. D. 1215; *Washington State Liquor Control Board* v. *United States, supra, F. B. Wilcon* v. *United States*, 13 Cust. Ct. 96, C. D. 876; *John A. Conkey & Co.* v. *United States*, 11 Cust. Ct. 217, Abstract 48554; *Tassini & Salisch-Parver* v. *United States*, 6 Cust. Ct. 571, Abstract 45512; *F. J. Benkart & Co., Inc.* v. *United States*, 2 Cust. Ct. 466, C. D. 177.

and declared:

Behind these decisions is the general rule that the dutiable status of imported merchandise is to be determined at the time it enters into the commerce of the country. A reading of the proclamation and the regulations prescribed in pursuance thereof is convincing that no departure from the general rule was intended in this case.

We regard the decision of the trial court as being well reasoned and its conclusion as being correct.

There were shipments before that court, of course, that are not involved before us.

From what has been recited herein, it may be seen that the shipments are divisible into three categories, namely: (a) the three cars which arrived at Cincinnati and were released from customs custody prior to October 25th; (b) the two cars which arrived at Cincinnati October 24th and were released from customs custody October 25th; and, (c) the four cars which arrived at Cincinnati and were released from customs custody after October 25th.

The trial court held those in category (a) dutiable and counsel for importer conceded the correctness of the court's holding at the hearing before us.

The court held those in categories (b) and (c) entitled to free entry and the Government did not bring the holding as to the merchandise in the four cars which arrived after October 25th before us by appeal.

We have carefully considered the record in the light of the oral argument and the initial and reply briefs filed on behalf of the Government, and we are of opinion that the legal status of the merchandise in category (b) is the same as that in category (c) and that the trial court's reasoning applies to both.

The regulations issued for the administration of the law under the proclamation of the President were to take effect *on* as well as *after* the date of the proclamation, that is, October 25th, 1946. As has been recited, quoting from the Government's brief, the permit issued October 18th shows upon its face that legal functions, additional to those which already had been exercised, were required to be performed by an inspector.

Those functions were drawing samples and measuring the plywood which, of course, could not be done until the cars arrived in Cincinnati. Only one car was there on the 18th and it was several days before another car arrived.

We think it must be held that the permit of October 18th, which constitutes all that is relied upon by the Government, was not an instrument which, in a legal sense, passed unconditional control of the plywood from customs custody to the importer or owner.

The decision of the Customs Court is *affirmed*.

WILLIAM P. COLE, JR., Judge, having participated below, disqualified himself to sit in this case, and JOSEPH R. JACKSON, Judge, retired, was recalled to participate herein, pursuant to section 294 (c) and (d), Title 28, United States Code.