**TETERS FLORAL PRODUCTS CO., INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**Court No. 80-9-01428.**

United States Court of International Trade.

May 10, 1984.

George R. Tuttle, P.C., San Francisco, Cal. (Gary C. Cooper, San Francisco, Cal.), for plaintiff.

Richard K. Willard, Acting Asst. Atty. Gen., Washington, D.C., Joseph I. Liebman, Atty. in Charge, Intern. Trade Field Office, and Michael P. Maxwell, New York City, for defendant.

## Opinion

RESTANI, Judge:

Both parties have moved for summary judgment in this action. The parties are in agreement that plaintiff caused certain artificial flowers from Hong Kong classifiable under Items A748.20 and A389.61, Tariff Schedules of the United States (TSUS) to come into the customs territory of the United States through the Port of Seattle, Washington, on February 17, 1978. Further relevant facts are that the merchandise was released to plaintiff on February 25, 1978 pursuant to an Immediate Delivery Permit. Effective March 1, 1978 [1] the Generalized System of Preferences (GSP) was amended to eliminate duty-free treatment for merchandise imported from Hong Kong and classifiable under Items A748.20 and A389.61, TSUS.[2] Executive Order 12041, dated February 25, 1978, published at 43 F.R. 8099, February 28, 1978. Executive Order 12041 was received at the Seattle Customs House early on February 28, 1978. Plaintiff's customs house brokers learned of the order the same day and intended to file the relevant entries on the afternoon of February 28, 1978. Due to "confusion" the entries were not filed on that date. Complaint, paragraph 16. A consumption entry covering the merchandise was filed on April 6, 1978.

The first question to be answered is whether the clause defining the effective date of the Executive Order conflicts with statutory law or retroactively deprives plaintiff of property rights. If that question is answered negatively, there is a second question as to whether plaintiff's merchandise should be afforded duty-free status because of a lack of due process or because of equitable considerations arising from the short time between notice of the Executive Order in question and its effective date.

With regard to the first question, plaintiff relies on the words of 19 U.S.C. § 2463 relating to the definition of articles eligible for duty-free treatment, arguing that the order, which was effective as to goods entered on or after March 1, 1978, is in conflict with statutory law. In 1978 § 2463 read in pertinent part:

(a) The President shall, from time-to-time, publish and furnish the International Trade Commission with lists of articles which may be considered for designation as eligible articles for purposes of this subchapter.

\*　　\*　　\*　　\*　　\*　　\*

(b) The duty-free treatment provided under § 2461 of this title with respect to any eligible article shall apply only—

(1) to an article which is imported directly from a beneficiary developing country into the customs territory of the United States . . . .

Plaintiff relies further on the General Headnotes of TSUS, particularly Headnote 3(c)(ii) which read in pertinent part:

. . . Whenever an eligible article is imported into the customs territory of the United States directly from a country or territory listed in subdivision (c)(i) of this headnote, it shall receive duty-free

---

**1.** Section 5 of Executive Order 12041 reads:

The amendments made by this Order shall be effective with respect to articles that are both: (1) imported on or after January 1, 1976, and (2) entered, or withdrawn from warehouse, for consumption on or after March 1, 1978.

**2.** Plaintiff's complaint also alleges that merchandise from Hong Kong classifiable under A774.60 was denied duty-free status by Executive Order 12041. This is incorrect. Duty-free status had been eliminated earlier for this merchandise and plaintiff has abandoned any claim relating to Item A774.60.

treatment, unless excluded from such treatment by subdivision (c)(iii) of this headnote, . . . .

Thus, plaintiff argues that under the plain wording of these provisions duty-free status attaches when goods physically come into the geographical customs territory of the United States.

■ First, 19 U.S.C. § 2463 deals with eligibility requirements for duty-free status.[3] Even assuming qualification under § 2463, more is required for entitlement to GSP status. The President must designate which merchandise may be considered for such treatment and may limit GSP treatment to certain articles and certain countries. 19 U.S.C. §§ 2463, 2464. Within the guidelines of the statute the President has considerable discretion. S.Rept. 93–1298, 93rd Cong. 2nd Sess. *reprinted in* 1974 U.S.Code Cong. & Admin.News 7349, *et seq. See also Florsheim Shoe Co. v. United States*, 6 CIT ——, 570 F.Supp. 734 (1983). Moreover, the language to which plaintiff refers appears to have been inserted in the statute to assure that only goods imported directly from a developing country, rather than those transshipped through an ineligible country, would be benefited by the statute. S.Rept. 93–1298, 1974 U.S.Code Cong. & Admin.News at 7355.

The statute which specifically governs withdrawal, suspension or limitation of duty-free status with regard to specific articles is 19 U.S.C. § 2464(a). The relevant portion of Executive Order 12041 was promulgated pursuant to that statute, and § 2464(a) says not a single word about the customs territory of the United States or the timing of the attachment of duty-free status.

■ Furthermore, as stated in *United States v. Mussman & Shafer, Inc.*, 40 C.C. P.A. 108, 112–113 (1953), quoting the trial court:

The word "importation" has been used in tariff statutes in two senses. On the one hand, it has been used to denote the time when the jurisdiction of the United States over merchandise brought into the country attaches. On the other hand, it has been used to denote the time when the status of the merchandise with respect to the duties chargeable thereon is to be determined. See *Washington State Liquor Control Board v. United States*, 20 Cust.Ct. 173, C.D. 1104. From the context of the proclamation and the regulations, it is clear that the latter meaning is the one which applies here, and the procedure here adopted by the Secretary of the Treasury accords with that which generally applies when a change in the duty status of imported merchandise is made by law.

As in the *Mussman* case there is no reason to believe Congress meant anything out of the ordinary by the use of the words "imported into the customs territory of the United States." The normal rule is that duty status is fixed at the time of entry. 19 C.F.R. § 141.69. *Page N. Goffigon v. United States*, 24 Cust.Ct. 81, 84 (1950). Also, in *Washington State Liquor Control Board v. United States*, 20 Cust.Ct. 173, 175 (1948), the court clearly stated that duty status is not fixed while goods are in customs control and duties remain unpaid:

In all of these cases the doctrine has been uniformly adhered to that so long as goods remain in the custody and control of the officers of the customs they are to be regarded as in customs custody so as to be affected by any new legislation in relation to the duties that the legislative body may see fit to adopt. In order to constitute such withdrawal from the custody of the customs and introduction into the body of commerce, payment of duties and due delivery and receipt by the importer of an unconditional permit of delivery were held necessary.

Plaintiff did not obtain unconditional delivery of its goods until entry was made on April 6, 1978. 19 C.F.R. § 142.11 (1977).

■ If Congress had wanted to change the longstanding rule with regard to fixing

---

**3.** Headnote 3(c)(ii) merely tracks its wording.

of duty status, it would have done so explicitly. It did not do so. Therefore no legally significant event occurred when the merchandise at issue crossed geographical boundaries on February 17, 1978, and the duty status of plaintiff's merchandise was not fixed until April 6, 1978, the date of entry. Executive Order 12041 did not retroactively deprive plaintiff of the benefits of duty-free status nor is it in contravention of any statutory provision.

■ We turn now to the question of whether plaintiff was denied procedural due process. Obviously, plaintiff has no right to a judicial-type hearing prior to the GSP amendment because the Executive Order in question involves a legislative act within the discretion of the President. *United States v. George S. Bush & Co., Inc.,* 310 U.S. 371, 379–380, 60 S.Ct. 944, 946–947, 84 L.Ed. 1259 (1940). The only question raised by plaintiff is whether it received adequate notice of the GSP amendment.[4]

■ There is little limitation in a case such as this on the power of the President, if his action is authorized by statute. *See United States Cane Sugar Refiners' Association v. Block,* 69 C.C.P.A. 172, 683 F.2d 399, 404 (1982), concerning Presidentially imposed quotas on the importation of sugar. Of course neither Congress nor the President may avoid constitutional restraints. Assuming *arguendo* that plaintiff was entitled to some procedural due process prior to revocation of duty-free status eligibility there must still be a balancing of the claimant's interest against that of the Government. *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

Regarding the plaintiff's interest we have already found that duty-free status had not attached as of the effective date of the GSP amendment. At most plaintiff had an expectation that a certain duty status would attach. The courts have not granted much significance to such expectations. *See Norwegian Nitrogen Products Co. v. United States,* 288 U.S. 294, 318, 53 S.Ct. 350, 359, 77 L.Ed. 796 (1933) and *Dart Export Corp. v. United States,* 43 C.C.P.A. 64, 74–76 (1956), *cert. denied* 352 U.S. 824, 77 S.Ct. 33, 1 L.Ed.2d 48 (1956). The plaintiff's exact interest was in having time to enter his goods before GSP entitlement ended. But plaintiff admits he had such time. He had actual notice of the GSP amendment before it occurred and his agents only failed to enter the goods before March 1, 1978 because of "confusion." On the other hand, the Government had valid concerns about competing imports. If too much notice of the GSP change were given, importers might be able to thwart Congressional intent by extra-ordinarily increasing affected imports during the notice period. Obviously a few more days notice might not have much effect, but in the context of a nonretroactive effective date for a GSP change and actual notice of the expected change, the scales do not balance in favor of plaintiff.[5]

Since plaintiff was not deprived retroactively of a property right, and as a matter of fact, it received adequate notice to enter the merchandise in question so as to take advantage of the then-existing duty-free status, summary judgment must be awarded the defendant.

---

**4.** As in *South Florida Growers Association, Inc. v. Dept. of Agriculture,* 554 F.Supp. 633, 4 ITRD (West) 1633, 1635 (S.D.Fla., 1982), cited by plaintiff, notice in the context of a discussion of due process usually refers to notice and opportunity to be heard, prior to deprivation of some property right. Neither *South Florida* which dealt with irreparable harm to property interests nor *Michelin Tire Corporation v. United States,* 82 Cust.Ct. 308, C.R.D. 79–6, 469 F.Supp. 270 (1979) which dealt with judicial review of administrative action seem relevant here. Neither case indicates when the type of notice plaintiff seeks should be provided in the context of a legislative act.

**5.** We do not hereby decide whether or not a plaintiff in the position of this plaintiff has due process rights. We merely hold that if it possesses them, they were not violated. For this reason plaintiff's equitable claims fail as well.