## GALLAGHER *v.* UNITED STATES (No. 247).[1]

ENTRY SOUGHT TO BE MADE AFTER OFFICE HOURS.

In June, 1909, certain liquors were withdrawn from warehouse at the port of New York, transported to Chicago, and entered for warehouse there July 29 following. On August 5 following, at about 5.30 o'clock p. m., the owners sought to withdraw these liquors, paying duty as of that date. *Held*, the collector properly refused the duties so tendered after office hours and properly, on August 6 ensuing, assessed the duties under the tariff act, August 5, 1909, effective that day.

United States Court of Customs Appeals, October 28, 1910.

APPEAL from a decision of the Board of United States General Appraisers, Abstract 23266 (T. D. 30601).

Affirmed.

*Lester C. Childs* for appellant.

*D. Frank Lloyd*, Assistant Attorney-General (*Martin T. Baldwin* on the brief), for the United States.

Before MONTGOMERY, HUNT, SMITH, BARBER, and DE VRIES, Judges.

HUNT, Judge, delivered the opinion of the court:

In June, 1909, Gallagher & Ascher, the appellants here, imported certain liquors into New York. The goods were withdrawn from warehouse at the port of New York and transported to Chicago and

---

[1] Reported in T. D. 31034 (19 Treas. Dec., 1121).

there entered for warehouse July 29, 1909. Entry was made for rewarehouse under a rewarehousing entry of July 29, 1909.

On August 5, 1909, at about 5.30 o'clock in the evening, a withdrawal entry for consumption, with duties due thereon, was tendered to a deputy collector of the entry and warehouse department of the Chicago customhouse. The deputy collector refused the offer. On August 6 payment, entry, and withdrawal were actually made under the tariff law of August 5, 1909.

It is admitted that the tariff law of August 5, 1909, went into effect, except where specially provided therein, on the day following its passage—that is, on August 6, 1909. The importers contend, however, that the transaction at the customhouse on the evening of August 5 was equivalent to a regular withdrawal entry and payment of duty on that date, and that therefore the act of 1909 had no application, and that duties should have been assessed under the tariff act of 1897. The Board of General Appraisers approved the refusal of the collector to accept the tender, basing their decision on the ground that the importers were too late in making their tender and entry, and that therefore they could not avail themselves of the provisions of the tariff law of 1897. From the decision of the board the importers have appealed to this court.

Gathering the facts from the testimony, it appears that Mr. J. M. Gallagher, of the firm of Gallagher & Ascher, prepared a withdrawal entry so as to have it ready for payment on August 5, "so that if there was any urgency everything would be ready." Mr. Gallagher says that he left his office at about 5.15 o'clock in the afternoon of August 5, taking with him the money for the payment of the duties; that at about 5.30 o'clock he found the door to the office of the customhouse was open, and that he went in and found a deputy collector in his office; that Mr. Ford, who was with the appellant, made a tender to the deputy collector, who replied that he could not accept it, that he had waited as long as he could, but that appellants were just a little too late. The cashier, who is ordinarily the proper person to receive the money paid for duties, was not in the customhouse when the appellants made the tender to the deputy collector, and there were only a few of the entry clerks still there.

On August 6, as hereinbefore stated, entries were made, and duty was assessed under the tariff act of 1909.

Under the facts as stated, the question for determination is whether or not the Board of Appraisers was correct in deciding that the tariff act of 1909 controlled the importation made by the appellants.

The basis of the argument of the appellants is that the tender by the importers was made on August 5 to the proper officer at his proper place of business, and during a business day, at a time when such office was still open to the public. Inasmuch as counsel for the Gov-

ernment admits that if tender of entry and payment were made at the proper time, to the proper person, appellants will be entitled to have the duties assessed under the law of 1897, the case is freed of any narrower question of the form of the tender made by the importers, and we can proceed to the merits under the facts.

Acting under the authority conferred by Revised Statutes, 1878, section 251, the Secretary of the Treasury established the following rule for the hours of business at the various customs offices:

ART. 1389. (Customs Regulations of 1908.) *Hours of business.*—Customs offices shall be kept open for business on all days of the year, except Sundays, Independence, Christmas, and New Year's Days and such other days as may be designated by law, or by the President of the United States, or by the Secretary of the Treasury, between the hours of 9 a. m. and 4.30 p. m., and these hours are to be prolonged when the necessities or interests of the public service require it.

The hours fixed by this regulation are wholly reasonable. Common knowledge of the usual way in which business affairs are conducted tells us that the regulation accords with the ordinary convenience of merchants in their daily transactions; hence we conclude that appellants have no ground for complaint against the collector in refusing their tender at 5.30 o'clock on August 5, unless the customhouse was actually opened for business when the tender was made and refused, or unless, on August 5, 1909, the situation became such that there arose a necessity of the public service which made it the duty of the collector to have prolonged the hours of business until 5.30 o'clock.

Upon the first point, however, the evidence is that when Mr. Gallagher went into the customhouse the cashier and most of the entry clerks had gone, and that the office was not open for the general transaction of business, and that it was not meant that it should be. The mere fact that Mr. Gallagher could enter, and that there was a deputy collector and several clerks in the office when he went in, signifies very little. For all that appears the door may have been left open for temporary convenience, and the few officials there may have remained to close up the business of the day, or may have tarried for their mere personal accommodation.

It does not appear that there were any other importers transacting business when these appellants went in; nor is there anything which tends to show directly or indirectly the slightest disposition or effort on the part of the officials to wrong or to embarrass the appellants. It may have been unfortunate for the importers, under all the circumstances, that the tariff law of 1909 was not signed until five minutes after 5 o'clock on the day they made their tender; but it would seem not inappropriate to suggest that the possibility of a sudden change in the law might well have been considered by them before such a thing actually did occur, so that even the argument of hardship does not appeal with real force.

Taking up next the contention that the circumstances of the times—the enactment of a new tariff law at 5.05 p. m. August 5, to be operative the next day—created a public necessity and that the interests of the public service required the prolonging of the hours after 4.30 o'clock on that day, and we are easily led to a conclusion adverse to the importers. The law is its own best expositor and should be examined in its entirety to arrive at the intention of the Congress which enacted it. Pennington v. Coxe (2 Cranch, 33).

The first objects of the statute, as stated in its title, were to provide revenue, equalize duties, and encourage the industries of the United States. Just when the act as passed by Congress should become effective was a question for the consideration of the legislative branch of the Government. The words of the act, in unmistakable expressions, provided that unless it was otherwise specially provided by the law the act should take effect "on the day following its passage" (sec. 42). Though this provision was prospective, it was in a general way wholly specific. But further: Congress with knowledge that there would be many instances where goods that had been previously imported for which no entry had been made, and that there must be many instances where goods had been entered without payment of duty and under bond for warehousing or any other purpose, for which no permits had been issued, presumably realizing, too, that confusion would follow unless explicit provisions were made to cover such cases, deliberately emphasized their generally expressed determination that the act should be in effect on the day after its passage, by providing (sec. 29) as follows:

SEC. 29. That on and after the day when this act shall go into effect all goods, wares, and merchandise previously imported, for which no entry has been made, and all goods, wares, and merchandise previously entered without payment of duty and under bond for warehousing, transportation, or any other purpose, for which no permit of delivery to the importer or his agent has been issued, shall be subjected to the duties imposed by this act and to no other duty, upon the entry or the withdrawal thereof: * * *

In the light of these several mandatory clauses, covering previous as well as subsequent importations, how can it now be urged that the necessities or interests of the public service required the collector to keep the customhouse open after half past 4 o'clock on August 5? From the standpoint of the public service, there was no need that importers who had not moved to enter their goods before the close of usual business hours on August 5, 1909, should be allowed to make entries after such usual office hours had passed; nor can the courts say that the circumstances were of such a character as that "interests of the public service" required the collector to have remained on duty until half past 5, in anticipation that Congress might enact a new tariff

law which might affect entries of certain goods then in warehouses. The public interests are what is expressed by statute adopted by Congress, and where in a statute so adopted and so explicit as the one under examination there is not only no exception in favor of importers situated as were these appellants, but a positive requirement that their goods were liable to duty under the new law, the courts can give no consideration to suggestions that it was the duty of officials to do unusual acts which would have been out of harmony with the plain import of the law.

These views lead to the conclusions that the collector's office was not open for business when the tender of the appellants was made, that neither necessity nor interest of the public service made it obligatory upon the collector to prolong his office hours until 5.30 on that day, and that the goods became dutiable under the tariff act of 1909.

The decision of the Board of Appraisers is therefore *affirmed.*