**GROUP ITALGLASS U.S.A., INC., Plaintiff,**

v.

**UNITED STATES, Defendant.**

**Court Nos. 91–05–00369 (BN) and 91–05–00369–S (BN).**

United States Court of International Trade.

Nov. 12, 1993.

---

Soller, Shayne & Horn, Paulsen K. Vande-vert, William C. Shayne, and Margaret H. Sachter, New York City, for plaintiff.

Stuart M. Gerson, Asst. Atty. Gen., Joseph I. Liebman, Attorney in Charge, International Trade Field Office, Mark S. Sochaczewsky, Commercial Litigation Branch, Civil Div., U.S. Dept. of Justice, Steven Berke, Attorney, U.S. Customs Service, Washington, DC, for defendant.

## OPINION AND ORDER

NEWMAN, Senior Judge:

### INTRODUCTION

These proceedings on defendant's motion to dismiss for lack of jurisdiction and plaintiff's opposition raise significant issues relating to the court's jurisdiction over actions challenging the denial of protests pursuant to 28 U.S.C. § 1581(a), and to the underlying administrative procedures for protesting decisions of the Customs Service ("Customs"). The issues presented are:

1. May a protest under 19 U.S.C. § 1514 be "filed" with Customs after regular business hours, when no personnel are present at the time, by a telephonic facsimile transmission of a copy, commonly referred to as a "fax"? If so, should the protest be deemed as "filed" on the date and at the time of transmission by plaintiff as recorded by the fax machine, or as of the date and time that the protest is actually received and filed by the appropriate Customs officer?

2. Are duties timely "paid" within the purview of 28 U.S.C. § 2637(a) for purposes of commencing an action within the jurisdiction of the court when a check for payment of duties is sent to Customs via a private express (next day) delivery service concurrently with the filing of a summons; and the check is actually received by Customs the day following the filing of the summons?

Pursuant to CIT Rule 12(b) defendant moves for an order in Court No. 91–05–00369, contesting the classification and duty assessment on certain glass containers, severing Protest No. 1001–0–006335, together with the three covered entries (Nos. 017–0914056–8, WO3–2000518–8, and WO3–2011976–5), and dismissing Court No. 91–05–00369 regarding the protest and covered entries for lack of jurisdiction. Defendant predicates its motion on the alleged untimeliness of the protest under 19 U.S.C. § 1514. Similarly, defendant moves to sever Entry No. 017–0913067–6 and to dismiss Court No. 91–05–00369 respecting such entry for lack of jurisdiction on the ground that plaintiff failed to pay supplemental duties prior to the commencement of this action in contravention of 28 U.S.C. § 2637(a). Defendant also seeks an extension of time for responding to the complaint in Court No. 91–05–00369.

For the reasons that follow, defendant's motion to sever and dismiss is granted as to all the subject entries.

### I.

As noted above, defendant's motion to dismiss on jurisdictional grounds in Court No. 91–05–00369 relative to Protest No. 1001–0–006335 and the three covered entries is predicated upon the alleged untimeliness of the protest under 19 U.S.C. § 1514. Pursuant to the statute, plaintiff had ninety days from the date of notice of liquidation to file a protest challenging the classification and assessment of duties. If any protest encompassed by this civil action was not filed within the ninety day statutory limit, such protest was filed untimely and the civil action as to such protest and the covered entries must be dismissed for lack of jurisdiction. *See Schering Corp. v. United States*, 67 CCPA 83, 86–88, C.A.D. 1250, 626 F.2d 162 (1980).

Defendant maintains that protest No. 1001-0-006335 against the liquidations of April 20, 1990 was not filed until July 26, 1990, 97 days after the date of notice of liquidation, when the original protest document (C.F. 19) was actually received at the Protest Section of the Customs Service at the World Trade Center in New York, New York, and hence was filed untimely. Plaintiff counters that its protest was timely filed with Customs by fax at 9:25 p.m. at Newark, New Jersey on July 19, 1990, the 90th and final date for filing following the date of the notices of liquidation.

Plaintiff's papers, including counsels' supporting affidavit, establish for purposes of this motion that on July 19, 1990, after 5:00 p.m., when Customs was closed for the transaction of regular business and its personnel had left for the day, plaintiff's counsel made futile efforts to deposit the original protest personally with a security guard at the door of the Customhouse located at the World Trade Center and also with various on-duty Customs enforcement personnel. Concededly, none of the foregoing personnel had any responsibility or authority to accept the filing of protests, and they expressly refused to receive plaintiff's protest.

Counsel for plaintiff thereafter returned to his office on the evening of July 19, 1990 and faxed a copy of the protest to the Fines, Penalties & Forfeitures Division ("FP & F") of the Area Director's office at Newark, and the fax machine recorded that the copy was received on July 19, 1990 at 9:25 p.m. At that point in time, Customs at Newark was closed for the day for the transaction of regular business, its personnel had left, and FP & F was not authorized to accept the filing of protests.

The following morning, July 20, 1990, the faxed copy of plaintiff's protest was apparently discovered by FP & F personnel at Newark, who were at a loss as to what do with the document since that Division was not the designated place for the filing of protests. Counsel for plaintiff was telephoned by the Newark office and was notified that the faxed document had been received, but should have been filed with the Protest and Residual Liquidations Office at the World Trade Center in New York and would be forwarded.

On July 26, 1990, personnel in the Protest Section at the World Trade Center telephoned plaintiff's counsel to inform counsel that the faxed copy had been received from Customs in Newark, and requested that counsel submit the original protest form (C.F. 19) to the Protest Section for processing. The original protest was thereupon mailed to Customs on the same date.

On November 16, 1990, Customs denied plaintiff's protest as untimely filed, and thereafter Court No. 91-05-00369 was commenced contesting the denial of the protest. Jurisdiction over plaintiff's action is predicated on 28 U.S.C. § 1581(a), and the court is confronted with a threshold issue as to whether the court has jurisdiction respecting the three entries covered by Protest No. 1001-0-006335.

In support of plaintiff's position that the protest was timely filed on July 19, 1990 at 9:25 p.m. when a copy of the protest was transmitted to Customs fax machine in Newark, plaintiff cites *Snake King v. United States*, 18 Cust.Ct. 33, C.D. 1041 (1947) as pivotal to the current issue. In *Snake King*, defendant moved to dismiss on the ground, *inter alia*, that the protest had not been timely filed. The evidence on the motion showed that shortly after 5:00 P.M., on the last day for plaintiff to file a timely protest, the deputy collector at the port of entry received a telephone call from Snake King's attorney to the effect that the latter wished to file a protest. Shortly thereafter, and although the office was officially closed for the day in accordance with the hours prescribed by Customs Regulations, Snake King's attorney appeared at the collector's office, was given access by the deputy collector, and at 5:10 p.m. the deputy collector accepted the protest, dated and time-stamped it.

Based on the foregoing factual scenario, the Snake King court distinguished *Gallagher v. United States*, 1 Ct.Cust.Appls. 69, T.D. 31034 (1910), discussed *infra*, found that the protest had been timely filed by counsel since the deputy collector was still in his

office after 5:00 p.m., Snake King's attorney had been voluntarily *admitted to the deputy collector's office* after closing time, the attorney filed the protest *personally* with the deputy collector who accepted the tender of the protest, dated it, and time stamped the protest with the notation that it had been received at "5:10 p.m. with the office having closed at 5 p.m." The court then concluded that "[s]uch presentation and qualified acceptance of the protest was a substantial compliance with section 514 of the Tariff Act of 1930, and the protest is therefore timely." *Id.* at 35–36. The court stressed that, "[w]e distinguish this case, upon the facts here present, from one where a party seeks to file a protest *after the office of the collector has been closed for the day and access thereto has not been possible.*" (Emphasis added.)

Although under the particular facts presented, the court found that the Snake King protest had been timely filed, significantly the court pointed out that Customs Regulations fixing the regular business hours of the office of the deputy collector were reasonable, and that Customs had no duty to prolong its hours of business beyond those established by the regulations.

Plaintiff urges that the fax machine at Customs in Newark should be deemed to be Customs' "designated agent" for the filing of protests after business hours; and therefore, the fax machine should be accorded the legal status and authority of an "agent" analogous to the deputy collector of Customs in *Snake King,* and the government's telegraph operator in *McCord v. Commissioner of Internal Revenue,* 123 F.2d 164 (D.C.Cir.1941) (where Board of Tax Appeals had instructed Western Union to deliver all messages to the Board over the government telegraph wire, the court held that the government's telegraph operator was the Board's "agent" with whom the taxpayer's petition could be left for filing).

*Snake King* and *McCord* are readily distinguishable from the facts here. Plaintiff's attempt to analogize its faxed communication to the personal delivery of a document to an authorized Customs official or to the government's telegraph operator who was specifically authorized by the Board of Tax Appeals to receive the Board's telegraphed communications is without merit. Absent a regulation or directive expressly authorizing facsimile transmission of protests to Customs after regular business hours, the court is not persuaded that the fax machine *per se* accepted plaintiff's protest as "filed," at least in any cognitive or consensual legal sense implicit in the designation of an agent. The protest was transmitted by fax when no personnel were in the office at Newark, and after tender of the protest had been refused, properly, by Customs personnel at the Trade Center having no authority to accept the document. *See Hawaiian Oke & Liquors, Ltd. v. United States,* 28 Cust.Ct. 58, 60–61, C.D. 1388 (1952) and cases cited (it is well settled that the attempted filing of a protest with an unauthorized Customs employee does not constitute a legal filing).

*Gallagher v. United States, supra,* is an old but still legally sound holding by the Appellate Court that hours of business for Customs established by regulation were "wholly reasonable"; and that the collector's personnel who happened to still be in the office after business hours had no legal duty to accept a warehouse withdrawal and could refuse a tender. *Cf. Hilker & Bletsch Co. v. United States,* 210 F.2d 847 (7th Cir.1954).

In point of fact, this case is precisely the same as the situation that the *Snake King* court specifically pointed up to be distinguishable, where a party seeks to file a protest after regular business hours, and access to the Customs office is not possible because the office is locked and the personnel have left for the day. In short, *Snake King* simply stands for the proposition that if within the statutory period for filing, a protest is personally tendered to an authorized Customs official in his office after regular business hours, and the latter is willing to receive and accept the after-hours filing of the protest, it will be deemed as timely filed. On the other hand, "depositing a protest, after regular office hours, with an employee not authorized to handle such matters, will not constitute proper filing thereof." *Hawaiian*

*Oke,* 28 Cust.Ct. at 61, citing *Gallagher.*[1]

Citing *McCord v. Commissioner, supra,* plaintiff's position is, essentially, that 19 U.S.C. § 1514, which prescribes a period of ninety days from the date of notice of liquidation within which to file a protest, requires that Customs provide the *full* ninety day period and hence must remain open for the filing of protests until 12:00 midnight. The court cannot agree that McCord imposes any such burden on Customs. In *McCord,* the taxpayer's petition was received by the government's telegraph operator (who the court held was the "agent" of the Board of Tax Appeals for purpose of receiving petitions for filing) shortly after the Board's 4:30 p.m. closing time established by its rules, but during the regular office hours of the government's telegraph office (open until 6:00 p.m.). Any suggestion in *McCord* that the Board was required to remain open until 12:00 midnight for the filing of petitions was mere dictum.

In any event, *Gallagher,* a decision of our own Court of Appeals having of course precedential effect in this court, approved of Customs regulations establishing reasonable hours of business and held those hours could be a time bar to after-business-hours transactions on the last day of the prescribed filing period. Clearly, if as in the instant case, where there were in fact no Customs personnel remaining in the Newark office at 9:25 p.m. of the 90th day to accept the filing of a protest, plaintiff's argument that after regular business hours a fax machine became Customs "designated agent" and "accepted" the filing of the protest by recording the date and time of transmission, is rejected. The fact that the fax machine was left on to receive communications in the evening did not signify Customs' designation of an agent or acceptance of a protest as "filed" after business hours. Hence, under the circumstances of this case, the document transmit-

ted by fax after business hours, although date and time stamped, has no greater status as a "filed" protest than if plaintiff's counsel, instead of faxing the document, had simply slipped it under the door or into a mail slot, where it might be found the next morning. *See Lewis–Hall Iron Works v. Blair, Commissioner of Internal Revenue,* 23 F.2d 972 (D.C.Cir.1928), *cert. denied,* 277 U.S. 592, 48 S.Ct. 529, 72 L.Ed. 1004 (1928) ("it is well established that in general, a paper is not 'filed' within the contemplation of the law until it is delivered to the proper officer to be filed by him").

Finally, it cannot be disputed that filing of certain papers by fax is an acceptable practice at the administrative level and in the courts under limited circumstances. Despite widespread and increasing use of telephonic facsimile communications technology in industry, courts have either shunned the filing or service of papers by fax or have restricted the use of fax to situations where the parties consent or to other limited specified circumstances. *See Salley v. Board of Governors, University of North Carolina,* 136 F.R.D. 417 (M.D.N.C.1991); CIT Rule 5, Practice Note 1; CAFC Rule 26.

Plaintiff has called to the court's attention the fact that Customs recently issued a directive permitting protests to be filed by fax *during business hours.* The Directive, ___ 3.A.1.c, states: "Protests/petitions received by facsimile transmission should be accepted and date stamped *by the close of business on the date of receipt.*" (Emphasis added.) The foregoing directive concededly was not in effect when the subject protest was faxed to Customs, and plainly does not authorize an after-business-hours transmission of a protest to Customs to be dated as "filed" as of the date of transmission. Plaintiff proposes that Customs should permit protests to be transmitted to it by fax after regular business hours (until 12:00 midnight), processed

---

1. 19 C.F.R. § 101.6 states that "[e]xcept as specified in paragraphs (a) through (g) of this section, each Customs office shall be open for the transaction of general Customs business between the hours of 8:30 a.m. and 5 p.m. on all days of the year." Moreover, 19 C.F.R. § 174.12(f) states that "[t]he date on which a protest is received by the Customs officer with whom it is required to

be filed shall be deemed the date on which it is filed." Plaintiff admits that the Fines, Penalties and Forfeitures employee was at a loss as to what to do with the faxed copy of the protest. Pl.Br. at 2. Thus, it appears that plaintiff's counsel failed to even fax the copy to "the Customs officer with whom it is required to be filed."

in the regular course of business the following business day, and dated and time stamped as filed as of the date and time of transmission recorded by the fax machine (*i.e.*, the previous day). The foregoing suggested modification of the directive is a matter properly addressed to Customs, not to the court. .Clearly the judicial fiat sought by plaintiff mandating that Customs accept protests as "filed" when transmitted by fax after the close of regular business hours would, if granted, be a wholly unwarranted intrusion into an area of legitimate administrative discretion, concerns and convenience.

## II.

■ Turning now to defendant's motion to dismiss on jurisdictional grounds with respect to Entry No. 017–0913067–6, defendant relies on 28 U.S.C. § 2637(a), which provides: "A civil action contesting the denial of a protest * * * may be commenced * * * only if all liquidated duties * * * *have been paid* at the time the action is commenced * * * *.*"

Citing *Nature's Farm Products, Inc. v. United States*, 819 F.2d 1127 (Fed.Cir.1987), *aff'g* 10 CIT 676, 648 F.Supp. 6 (1986), defendant insists that the payments required by the above statute must be *received* by Customs *prior to commencement of an action* under 19 U.S.C. § 1515 contesting the denial of a protest, and not merely sent in the mail. *Nature's Farm* is dispositive of the issue.

There is no dispute that on May 15, 1991, the date that the summons was filed in Court No. 91–05–00369, plaintiff sent by Federal Express, a private express delivery service unaffiliated with the United States Postal Service, for next day delivery, a check for the supplemental duties owing in Entry No. 017–0913067–6 to the National Finance Center in Indianapolis, Indiana. The check was in fact received at the Center the day following commencement of the action.

Plaintiff contends that for purposes of § 2637(a), the supplemental duties owing in Entry No. 017–0913067–6 should be deemed to have been paid on May 15, 1991, the date the check was sent by Federal Express to the National Finance Center, and the date plaintiff's summons was filed in Court No.

91–05–00369. Moreover, plaintiff requests that the court "review" (*viz.*, overrule) the Federal Circuit's decision in *Nature's Farm*, and apply its own "mail-box" rule under CIT Rule 5(g).

Under CIT Rule 5(g), pleadings and papers sent to the court by certified or registered mail, return receipt requested, are deemed filed or served as of date of mailing. Notwithstanding that in *Nature's Farm* this court (Aquilino, J.) flatly held that Rule 5(g) has no relevance to payment of duties (*see Nature's Farm*, 10 CIT at 678, 648 F.Supp. 6), and that in any event, plaintiff admittedly did not even utilize registered or certified mailing as required by the "mail-box" rule, plaintiff baldly contends that the court should deem its supplemental duties as paid on May 15, 1990 under the mail-box rule. The short of the matter is that the court lacks jurisdiction in Court No. 91–05–00369 with respect to Entry No. 017–0913067–6, since plaintiff failed to pay the increased duties owed until the day after the summons was filed with the court.

In conformance with the foregoing, it is hereby ORDERED:

1. Defendant's motion to sever and dismiss for lack of jurisdiction in Court No. 91–05–00369, is granted with respect to Protest No. 1001–0–006335, together with the three entries covered by the latter protest (Entry Nos. 017–0914056–8, WO3–2000518–8, and WO3–2011976–5) and also with respect to Entry No. 017–0913067–6.

2. The above protest and entries shall be severed from Court No. 91–05–00369 designated as Court No. 91–05–00369–S, and such severed action shall be dismissed for lack of jurisdiction. A separate judgment of severance and dismissal will be entered accordingly.

3. Defendant shall file its answer to the complaint in Court No. 91–05–00369 regarding the remainder of that action within ten days of the entry of this order.

4. Plaintiff's request for oral argument is denied since defendant's grounds for dismissal are completely sound, while plaintiff's op-

position arguments are very insubstantial, if not totally frivolous.

## JUDGMENT

Defendant having moved to sever this action with respect to certain entries covered by Court No. 91–05–00369, to include said entries in Court No. 91–05–00369–S, and to dismiss said severed case for lack of jurisdiction, and now the court, after due deliberation, having rendered an opinion and order herein; now, in conformity with said order,

IT IS HEREBY ADJUDGED AND DECREED:

1. Defendant's motion to sever and dismiss for lack of jurisdiction in Court No. 91–05–00369 is granted with respect to Protest No. 1001–0–006335, together with the three entries covered by the latter protest (Entry Nos. 017–0914056–8, WO3–2000518–8, and WO3–2011976–5) and also with respect to Entry No. 017–0913067–6.

2. The above protest and entries shall be severed from Court No. 91–05–00369 designated as Court No. 91–05–00369–S, and such severed action shall be, and hereby is, dismissed for lack of jurisdiction.